## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

LYNN M. SISUL,                    )
                                  )
        Plaintiff,                )
                                  )
            v.                    )        Case No. 4:08-cv-4044
                                  )
MICHAEL J. ASTRUE                 )
COMMISSIONER OF                   )
SOCIAL SECURITY,                  )
                                  )
        Defendant.                )

## O R D E R  &  O P I N I O N

Before the court are Plaintiff's Motion for Summary Judgment, filed on February 27, 2009 (Doc. 11) and Defendant's Motion for Summary Affirmance, filed on May 12, 2009 (Doc. 13).  For the reasons stated below, Plaintiff's Motion for Summary Judgment is granted in part, and Defendant's Motion for Summary Affirmance is denied.

## BACKGROUND

### I.    PROCEDURAL HISTORY

Plaintiff Lynn Sisul filed for disability insurance benefits on May 20, 2005, alleging disability since November 1, 2004.  (R. 73).  Her claim was denied initially and upon reconsideration.  (R. 44-47, 49-53).  Following a March 21, 2008 hearing, Administrative Law Judge (ALJ) Gerard Rickert denied Plaintiff's claim.  (R. 20, 416-39).  On June 2, 2008, the Appeals Council denied review of the ALJ's decision, and the ALJ's decision thus became the Commissioner's final decision for purposes

of 42 U.S.C. § 405(g).  See 20 C.F.R. §§ 404-955, 422.210.  (R. 3).  On August 26, 2008, Plaintiff Lynn Sisul filed a complaint seeking judicial review of the ALJ's decision in federal court.

## II.  MEDICAL HISTORY

### A.  History of Crohn's Disease

Plaintiff was originally diagnosed with Crohn's disease[1] in October 2003. (R. 267). On July 31, 2004, Plaintiff was admitted to the hospital, having an acute flare-up[2] of Crohn's disease, acute diarrhea with blood and mucus, and abdominal pain; she was discharged on August 2, 2004.  (R. 213).  Dr. Lauri Harsh noted that Plaintiff's followthrough with treatment had been "compromised due to lack of sufficient funds to pay for the medical treatment."  (R. 213).  On November 5, 2004, Plaintiff was hospitalized overnight due to abdominal pain.  (R. 169).  She was diagnosed with Crohn's disease involving the distal small bowel and colon, and leukocytosis.  (R. 169).

---

[1]    Crohn's disease, also known as regional enteritis, is "[a]n inflammation of the small intestine, frequently involving only the last 12 to 14 inches, but occasionally affecting other parts of the small intestine or extending into the colon (large intestine). …Clinically, the condition is accompanied by crampy abdominal pain, diarrhea, anorexia (loss of appetite), and loss of weight.  Pathologically, the disease is marked by patchy (here and there) inflammation, deep ulcers which may bore through the wall of the intestine and form fistulas, a narrowing of the lumen (interior diameter) of the intestine by fibrosis (invasion or overgrowth of fibrous tissue), and an influx of lymphocytes (certain white blood cells)."  5-R ATTORNEYS' DICTIONARY OF MEDICINE 1495 (2005).  Approximately 70% of Crohn's patients require surgical treatment.  2-CH ATTORNEYS' DICTIONARY OF MEDICINE 6931 (2005).

[2]    The terms "flare-up" or "flare" and "exacerbation" are used interchangeably throughout the record.  Unless the word "exacerbation" is quoted from the record, the Court will refer to these periods as "flare-ups."

In mid-November 2004, a colonoscopy was performed on Plaintiff to measure the extent of the Crohn's disease. (R. 163). "[N]o obvious disease was seen in the transverse colon or at the stomach flexure." (R. 163). Whitish exudates and shallow ulcerations were seen without any active bleeding in the left colon. (R. 163). On February 16, 2005, Plaintiff was admitted to the hospital overnight due to complaints of nausea, vomiting, and diarrhea. (R. 149). Plaintiff was characterized as "very weak." (R. 152). In December 2005, Dr. Gloria Diaz, a gastroenterologist, examined Plaintiff and reported that Plaintiff stated she had a significant increase in bowel movements the last two or three days. (R. 269).

On January 3, 2006, Plaintiff met with her treating physician, gastroenterologist Dr. Ahmad Cheema, for an evaluation. (R. 267). Dr. Cheema noted that Plaintiff reported having up to ten stools per day accompanied by abdominal pain, and nausea. (R. 267). A month later, Plaintiff again met with Dr. Cheema and reported that she was having three to four bowel movements per day and was off prednisone. (R. 265). Plaintiff denied any significant abdominal pain other than on one occassion. (R. 265). In March 2006, Plaintiff was evaluated at Gastroenterology Consultants and reported that she was only having two to three bowel movements per day and only occasional rectal bleeding. (R. 264). On June 16, 2006, Dr. Cheema met with Plaintiff and found no change from his prior evaluation. (R. 260).

Late in June 2006, Dr. Kishore Alapati performed a fistulotomy on Plaintiff. (R. 208-09). On July 10, 2006, Plaintiff met with Dr. Alapati for a follow-up visit;

she did not report any other significant complaints and had recovered "pretty well" from her operation. (R. 258). Plaintiff reported that she did "notice some perianal discharge, but her bowel movements [had] significantly improved." (R. 258).

In early September 2006, Dr. Cheema performed a colonoscopy and found Crohn's disease, colonic ulcers, and small internal hemorrhoids. (R. 250-51). On September 20, 2006, Plaintiff again met with Dr. Cheema, who reported her examination was unchanged from his prior assessment and "she was not having significant Crohn's disease related symptomatology" at that time, which he thought was due to her recent prednisone intake. (R. 248). In October 2006, Plaintiff met with Dr. Cheema, complaining about intermittent abdominal pain and reporting four to five bowel movements per day with a small amount of blood. (R. 247).

In December 2006, Dr. Cheema completed a "Form: Crohn's & Colitis Residual Functional Capacity Questionnaire." (R. 233-36). Dr. Cheema noted that Plaintiff could tolerate moderate stress provided that she be allowed time off occasionally when she experienced a flare-up; her "experience of pain or other symptoms [was often] severe enough to interfere with attention and concentration." (R. 234-35). Dr. Cheema reported that Plaintiff would likely be absent from work about two days per month because of Crohn's disease. (R. 233-26). Dr. Cheema opined that Plaintiff would need a job in which she could shift positions between sitting, standing, and walking at will, in which she would have ready access to a restroom, and in which she would be able to have unscheduled restroom breaks during the day. (R. 235). During the periods of Plaintiff's flare-ups, she would have

little advance notice of the need to use the restroom. (R. 235). Finally, Dr. Cheema noted that Plaintiff could rarely lift 50 pounds, occasionally lift 20 pounds, and frequently lift 10 pounds or less. (R. 236).

On June 4, 2007, Plaintiff reported to Dr. Miniter, her rheumatologist, that she had been having problems with her Crohn's disease and had developed another fistula that tended to bleed. (R. 295-96). On August 6, 2007, Plaintiff was hospitalized overnight with vomiting, bloody diarrhea, and abdominal pain, due to a flare-up of her Crohn's disease. (R. 307-08). On December 5, 2007, Dr. Miniter noted that Plaintiff had problems with intermittent flare-ups of Crohn's disease, that she was off of prednisone, and that her rectal bleeding had stopped. (R. 291-92).

On January 10, 2008, Plaintiff was examined by Dr. Cheema, who reported that Plaintiff was having ongoing diarrhea, about four bowel movements per day, and had lost weight. (R. 302). Dr. Cheema also noted that no other changes in treatment were being made at that time, except that Plaintiff could take Imodium occasionally, especially to avoid having to go to the bathroom during the night. (R. 302).

## B. History of Rheumatoid Arthritis

In August 2004, Dr. Susan Bird performed a bone density examination at Plaintiff's doctor's request, and found that "[t]he mineralization of the left hip fell in the normal range" and "[t]he mineralization of the lumbar spine fell in the

osteopenic range . . ." (R. 211).  Dr. Bird noted that Plaintiff was therefore "at increased risk of fragility fractures in the spine."  (R. 211).

At the end of August 2006, Plaintiff met with Dr. Miniter at Quad City Rheumatology on August 31, 2006, for an evaluation of her polyarthralgias and fatigue.  (R. 230).  Dr. Miniter reported that Plaintiff had "fatigue and polyarthralgias consistent with fibromyalgia" and a history of Crohn's disease.  (R. 232).  On September 12, 2006, Plaintiff had a re-evaluation of her polyarthralgias and fatigue and Dr. Miniter found that Plaintiff had active polyarthritis consistent with rheumatoid disease and Crohn's disease.  (R. 227-29).

On November 14, 2006, Dr. Miniter re-evaluated Plaintiff's rheumatoid arthritis and Plaintiff "reported that she was feeling significantly better with the use of Humira," which was also helping with her Crohn's disease.  (R. 299-300).  Plaintiff returned to Dr. Miniter's office on June 4, 2007, for a re-evaluation, at which she reported that her arthritis had been very good and caused her very few problems.  (R. 295-96).  On December 5, 2007, Dr. Miniter saw Plaintiff again and noted that she was doing very well with her rheumatoid arthritis, but had problems with intermittent flare-ups of Crohn's disease.  (R. 291-92).

## III.   AGENCY EVALUATIONS

In June 2005, Dr. Vincent Francis, a state agency physician, reviewed Plaintiff's medical history and found that Plaintiff could occasionally lift and/or carry fifty pounds, frequently lift and/or carry twenty-five pounds, stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday, and sit

with normal breaks for a total of about 6 hours in an 8-hour workday. (R. 200). He found that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (R. 201-03). In August 2005, Dr. Richard Bilinsky, another state agency physician, reviewed Plaintiff's medical history and affirmed Dr. Francis's assessment. (R. 197-98). Neither of these determinations was based on a physical examination of Plaintiff, nor do they contain any explanation or analysis of Plaintiff's medical condition; they are merely conclusory.

## IV.  HEARING TESTIMONY

On March 21, 2008, Plaintiff appeared with her attorney and testified at a hearing before the ALJ. Plaintiff, who was 26 years old at the time of the hearing, testified that she had worked as a cashier and manager at a restaurant from 1997 to 2002, and prior to that time, she had worked as a waitress.[3] (R. 422). Plaintiff performed clerical work at Cardiovascular Medicine P.C. for about three months some time after November 1, 2004. (R. 423). Plaintiff testified that she stopped working at Cardiovascular Medicine P.C. because she had three procedures while working there, a fistulotomy, a colonoscopy, and an endoscopy. (R. 423-24). The ALJ noted that her biggest problem was Crohn's disease; she also had some anemia and was being treated for rheumatoid arthritis. (R. 423). When asked how often she experienced a flare-up, she testified that she had a flare-up every two to three

---

[3]    This conflicts slightly with the work-history forms Plaintiff completed, as the forms indicate that Plaintiff worked as a restaurant salesperson and manager from 1995 to 2000, and as a waitress from 2001 to 2004. (R. at 78-93). It appears from the transcript that the ALJ reversed Plaintiff's history when he asked her about it, and that Plaintiff merely agreed with his question, with the result that the transcript varies from the forms. (R. at 422)

months. (R. 425). Dr. Cheema was the physician treating her for Crohn's disease; she last saw him two months prior to the hearing. (R. 425). Plaintiff testified that the Crohn's disease affects her ability to go about normal activities because "it flares up at any time." She testified, "I usually have five to eleven bowel movements a day and I have a lot of pain with those and I have to stop whatever I'm doing and curl up in pain." (R. 425).

The ALJ then questioned her about her rheumatoid arthritis. (R. 426). Plaintiff testified that Dr. Miniter was the treating physician and she had been on Humira for about eight months to help with the rheumatoid arthritis. (R. 426). She testified that the rheumatoid arthritis makes her "really tired and wore out." (R. 427). In response to the ALJ's questioning about her typical day, Plaintiff testified that she gets her children ready for school, vacuums, prepares meals, does laundry, and watches television. (R. 427-28). She also testified that she shops for groceries, uses the computer, and reads novels. (R. 427-29).

When examined by her attorney, Michael DePree, Plaintiff testified that she has been ordered by Dr. Cheema to eat six to eight small meals a day. (R. 432). She testified that after each meal, she typically has a bowel movement that is attended by pain. (R. 432). When her attorney asked her about the flare-ups that occur every two to three months, she testified that the flare-ups can last two to three weeks. (R. 435).

## IV.    ALJ's Decision

On April 10, 2008, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 20).  He found that Plaintiff's Crohn's disease and rheumatoid arthritis qualified as "severe" impairments.  (R. 12).  However, the ALJ found that Plaintiff's alleged anemia was not a "severe" impairment.  (R. 13).

In his report, the ALJ concluded that, although Plaintiff's impairments were severe, she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."  (R. 13).  He indicated that Plaintiff's "rheumatoid arthritis does not meet the criteria of section 14.09 of the Listing of Impairments."  (R. 13).  He noted that Plaintiff's rheumatoid arthritis did not satisfy Listing Section 1.02 because "[t]here is no evidence in the medical record to suggest any restriction or gross anatomical deformity, nor is there evidence of inability to ambulate or perform motor movements."  (R. 14).

The ALJ also reported that a claimant must provide a great deal of medical evidence in order to meet Listing 5.06, inflammatory bowel disease (Crohn's disease), including: "medically documented evidence of endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with: obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal, dilatation, confirmed by appropriate medically acceptable imaging or in surgery."  (R. 14).  The ALJ reported that there was "no evidence of the foregoing clinical

findings or hospitalizations in the objective medical record that would satisfy the requirements of Listing 5.06." (R. 14).

The ALJ then concluded that Plaintiff had the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c). (R. 19). He based this conclusion on four findings. First, the ALJ stated that "[t]he record reflects work activity after the alleged onset date" of November 2004, which indicated that Plaintiff's "daily activities have, at least at times, been somewhat greater than [she] has generally reported." (R. 19). Second, he found that Plaintiff's "treatment has been essentially routine and/or conservative in nature."[4] (R. 19). The ALJ further relied on the finding that Plaintiff had held a job while suffering symptoms at "approximately the same level of severity" prior to the alleged onset of disability. (R. 19). Finally, he stated that, under the regulations and Social Security ruling governing claimants' symptom allegations, Plaintiff's "allegations of disabling symptoms and limitations cannot be accepted." (R. 19).

The ALJ then concluded that because he found Plaintiff to have the residual functional capacity to perform the full range of medium work, she is capable of performing her past relevant work as a restaurant cook, manager, or waitress. (R. 19). He based this conclusion on "claimant's description of the work as she

---

[4]     To the extent the ALJ relied on this finding to support his determination as to Plaintiff's abilities, this reliance was inappropriate. There is no statement by a doctor in the record that her treatment has been routine or conservative, or, even if it has been, that this treatment decision was made because Plaintiff's disease did not cause the alleged limitations. An ALJ may not make his own inferences as to the meaning of particular courses of treatment. Myles v. Astrue, 08-2908, 2009 WL 2870616, *4-5 (7th Cir., Sept. 9, 2009).

performed it."[5]  (R. 19).  In the end, the ALJ concluded that Plaintiff was not under a disability for the purposes of the Social Security Act.  (R. 20).

## DISCUSSION

### I.  LEGAL STANDARD

To be entitled to disability benefits under the Social Security Act, a claimant must prove that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  To determine if the claimant is unable to engage in any substantial gainful activity, the Commissioner of Social Security engages in a factual determination.  McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980).  That factual determination is made by using a five-step sequential analysis.  20 C.F.R. § 404.1520; Maggard v. Apfel, 167 F.3d 376, 379-80 (7th Cir. 1999).

In the first step, a threshold determination is made to decide whether the claimant is presently involved in a substantially gainful activity.  20 C.F.R. § 404.1520(b).  If the claimant is not under such employment, the Commissioner of Social Security proceeds to the next step.  Under the second step, the Commissioner

---

[5]  In his determination that Plaintiff could perform her past relevant work, the ALJ relied on Plaintiff's "description of the work as she performed it."  (R. 19).  However, during the hearing, Plaintiff was not asked and did not testify about her work as a waitress.  The only record evidence the Court finds as to Plaintiff's particular job duties as a waitress are Plaintiff's "Work History Reports" completed in June and August of 2005.  (R. 78-93).  In these Reports, Plaintiff states that as part of her job, she helped to unload shipments of stock, which required that she lift boxes of 10-50 pounds.  (R. 79-81, 87-89).  She wrote that, after her diagnosis, she was unable to help with the unloading, as she could not lift the boxes without abdominal pain.  (R. 80-81).  In addition, another job requirement that Plaintiff states she was unable to fulfill after her diagnosis was that she cover all of her assigned shifts and work continuously without frequent bathroom breaks during her shift.  (R. 80-81).

evaluates the severity and duration of the impairment. 20 C.F.R. § 404.1520(c). If the claimant has an impairment that significantly limits her physical or mental ability to do basic work activities, the Commissioner will proceed to the next step. Under the third step, the Commissioner compares the claimant's impairments to a list of impairments considered severe enough to preclude any gainful work. If the elements on the list are met or equaled, he declares the claimant eligible for benefits. 20 C.F.R. § 404.1520(d). If the claimant does not qualify under one of the listed impairments, the Commissioner proceeds to the fourth and fifth steps.

In the fourth step, the claimant's Residual Functional Capacity (RFC) is evaluated to determine whether the claimant can pursue her past work. 20 C.F.R. § 404.1520(f). If she cannot, then the Commissioner evaluates the claimant's ability to perform other work available in the economy. 20 C.F.R. § 404.1520(g). The claimant has the burdens of production and persuasion in steps one through four. However, once the claimant shows an inability to perform her past work, the burden shifts to the Commissioner to show an ability to engage in some other type of substantial gainful employment. See Tom v. Heckler, 779 F.2d 1250, 1253 (7th Cir. 1985); see also Halvorsen v. Heckler, 743 F.2d 1221, 1225 (7th Cir. 1984).

Once a case reaches a federal district court, the court's review is governed by 42 U.S.C. 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "such evidence as a reasonable mind might accept as

adequate to support a conclusion." <u>Maggard</u>, 167 F.3d at 379 (<u>quoting</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)).

A court's function on review is not to try the case <u>de novo</u> or to supplant the ALJ's finding with the Court's own assessment of the evidence. <u>See</u> <u>Pugh v. Bowen</u>, 870 F.2d 1271, 1274 (7th Cir. 1989). A court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. <u>See</u> <u>Delgado v. Bowen</u>, 782 F.2d 79, 82 (7th Cir. 1986). Furthermore, in determining whether the ALJ's findings are supported by substantial evidence, credibility determinations made by the ALJ will not be disturbed unless clearly erroneous. <u>See</u> <u>Imani v. Heckler</u>, 797 F.2d 508, 510 (7th Cir. 1986).

However, the ALJ must articulate reasons for rejecting or accepting entire lines of evidence. <u>Godbey v. Apfel</u>, 238 F.3d 803, 807-08 (7th Cir. 2000). The ALJ is required to "sufficiently articulate his assessment of the evidence to 'assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.'" <u>Carlson v. Shalala</u>, 999 F.2d 180, 181 (7th Cir. 1993) (<u>quoting</u> <u>Stephens v. Heckler</u>, 766 F.2d 284, 287 (7th Cir. 1985)). In deciding whether the claimant can return to her former work, the ALJ must "determine the physical demands of the particular type of…work that this claimant had done and then compare those demands to her present capabilities." <u>Strittmatter v. Schweiker</u>, 729 F.2d 507, 509 (7th Cir. 1984). <u>See</u> <u>Smith v. Barnhart</u>, 388 F.3d 2512 (7th Cir. 2004).

## II. ANALYSIS

Plaintiff makes the following arguments, all related to the ALJ's treatment of Dr. Cheema's report: (1) the ALJ erred in failing to address Dr. Cheema's opinion of Plaintiff's absenteeism; (2) the ALJ erred in failing to address evidence relevant to Dr. Cheema's opinion that Plaintiff was limited in lifting weight; and (3) the ALJ erred in failing to contact Dr. Cheema about the frequency and severity of Plaintiff's flare-ups. Dr. Cheema's report, as the report of a treating physician, is entitled to controlling weight, if it is well-supported by medical evidence and not inconsistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the report is not entitled to controlling weight, the ALJ is to apply the factors of 20 C.F.R. § 404.1527(d)(2)(i)-(ii) or § 416.927(d)(2)(i)-(ii) in evaluating what weight to give the report.

Plaintiff's primary complaint is that the ALJ did not specify whether he was accepting or rejecting Dr. Cheema's report, or what weight he gave to it. Plaintiff does not appear to challenge the ALJ's analysis of the first three steps. Rather, she alleges that the ALJ erred in his assessment of her RFC and his determination that she could return to her prior relevant work. The Court agrees that the ALJ's analysis under the first three steps appears to be supported by substantial evidence, but finds, for the reasons stated below, that the ALJ's analysis of Plaintiff's RFC and ability to return to her past relevant work is flawed.

A. The ALJ erred in failing to address the impact of Dr. Cheema's opinion of Plaintiff's absenteeism on his determination that she could return to her past relevant work.

Plaintiff argues that the ALJ improperly failed to address Dr. Cheema's opinion that Plaintiff would likely miss about two days of work per month. Plaintiff argues that the ALJ was required to explain the weight he gave to Dr. Cheema's opinion, even if his opinion could be found not to be entitled to controlling weight. Plaintiff asserts that "Dr. Cheema is a long-term treating specialist whose opinion, as a matter of law, is entitled to great deference, even if not fully consistent with the balance of the record." (Pl.'s Br. at 15). Additionally, Plaintiff cites her numerous doctor visits and hospitalizations to demonstrate that Dr. Cheema's opinion is well-supported. Plaintiff argues that the ALJ's failure to address Dr. Cheema's opinion regarding absenteeism makes his decision unsupported and illogical because he fails to connect the medical evidence and Dr. Cheema's opinion in making his decision that Plaintiff can return to her past relevant work.

Defendant argues that the ALJ was not required to grant controlling weight, or even significant weight, to Dr. Cheema's opinion regarding absenteeism. Defendant argues that Dr. Cheema failed to provide medical evidence to support his opinion that Plaintiff would likely be absent from work two days a month, and that Dr. Cheema did not report the numerous doctor visits or hospitalizations in his assessment that Plaintiff cites. Additionally, Defendant claims that Plaintiff could schedule her doctor appointments when she is not scheduled to work. Defendant contends that Dr. Cheema's entire report should not be given significant weight

because he fails to provide adequate explanation for his conclusions. Additionally, Defendant argues that Dr. Cheema's opinion should not be given significant weight because it is inconsistent with other medical evidence on record, including the state agency physicians' opinions. Finally, Defendant argues that Dr. Cheema's judgment as to Plaintiff's absenteeism is not a medical opinion, because "it does not reflect any judgment about what Plaintiff could still do despite her impairment or her physical restrictions." <u>See</u> 20 C.F.R. § 404.1527(a)(2), 416.927(a)(2). (Def.'s Br. at 10).

It is apparent from the record that Dr. Cheema's opinion that Plaintiff would probably miss about two days of work per month was not based on an assumption that she would need to visit the doctor often for "appointments," as Defendant seems to suggest, but rather that she would have "exacerbations," or flare-ups, of her symptoms with that frequency, which is a medical opinion.[6] Defendant misunderstands Dr. Cheema's point -- Plaintiff's frequent hospitalizations and doctor visits represent "periods of active disease," when she would need to miss work because of her illness, not pre-planned check-ups. Given Plaintiff's record of more than 30 doctor visits in less than three and a half years, including at least five hospitalizations, which does not include days when Plaintiff's symptoms were

---

[6]     In filling out the RFC questionnaire form, Dr. Cheema indicated that Plaintiff could tolerate moderate stress in her job, "provided she gets time off occasionally when she has [symptom] exacerbations." (R. at 235). On the next page of the form, Dr. Cheema answered the question of how often Plaintiff would need to miss work: about two days per month. (R. at 236). Thus, by reading the form as a whole, there is no question as to why Dr. Cheema believed that Plaintiff would need to miss about two days of work a month, as he indicated that these absences were due to the frequency of her flare-ups.

exacerbated but she did not go to the doctor, Dr. Cheema's opinion that Plaintiff would have to miss about two days of work per month because of her disease appears well-supported by the record.

Indeed, there is no indication in the record that the ALJ rejected Dr. Cheema's opinion as to Plaintiff's need to miss two days of work per month and take frequent unscheduled bathroom breaks.[7] Defendant notes that an ALJ need not articulate his consideration of all the factors listed for rejecting a treating physician's report, but may merely give "good reasons" for rejecting the opinion. Here, however, the ALJ did not give any reasons for rejecting Dr. Cheema's report, or even say that he was doing so -- no reason cannot, by definition, be a "good reason." He merely mentioned the report and moved on. Since the ALJ did not say that he was rejecting the report, it must be assumed that he accepted it, as the regulations state that treating physicians' opinions are generally given more weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

The ALJ does not appear to have rejected Dr. Cheema's report. Instead, he seems to have determined that missing two days of work per month would not impair Plaintiff's ability to do her past relevant work as a waitress. He did not mention Dr. Cheema's opinion that Plaintiff would require frequent bathroom breaks. This itself is error, as an ALJ may not "address mere portions of a doctor's report" that he accepts, but ignore the parts that do not support his finding. Myles v. Astrue, 08-2908, 2009 WL 2870616, *5 (7th Cir., Sept. 9, 2009).

---

[7]     The only part of Dr. Cheema's opinion that the ALJ appears to have rejected was Dr. Cheema's opinion that Plaintiff could rarely lift 50 pounds, occasionally lift 20 pounds, and frequently life 10 pounds or less. (R. at 18).

In addition, the ALJ's finding that Plaintiff's absences would not impair her ability to work seems to have been based on evidence that Plaintiff's "allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date. The fact that the impairments did not prevent [Plaintiff] from working at that time strongly suggests that it would not currently prevent work." (R. at 19). Also, the ALJ noted that Plaintiff had worked after the alleged onset date. (R. at 19).

Plaintiff's work history prior to the alleged onset date of November 2004, though, shows that she was only able to keep the waitressing job she had at the time of the Crohn's diagnosis for a few months before she was fired, and only lasted about three months at her subsequent waitressing job. Plaintiff indicated that her inability to keep these jobs was due to the fact that she had to take frequent bathroom breaks, could not help unload stock, and had to have others cover her shifts. (R. at 78-93). The fact that Plaintiff briefly held two waitressing jobs after her diagnosis, but before her alleged onset date, is not substantial evidence on which to make the determination that Plaintiff is able to return to that type of work now, especially given the statements by Plaintiff as to her poor performance in those jobs.[8] He did not discuss the attendance requirements and availability of frequent breaks, as he must do in order to find that Plaintiff could return to her

_____

[8]     The ALJ specifically found that Plaintiff's "allegations of disabling symptoms and limitations cannot be accepted," but did not address whether he found credible her explanations as to <u>why</u> she lost her previous jobs.

prior relevant work notwithstanding these problems.[9] <u>Strittmatter</u>, 729 F.2d at 509.

Beginning in November 2004, after the alleged onset date, Plaintiff briefly held a clerical job, which she had to leave because she had three medical procedures during her three month tenure. (R. 423). This clerical work also does not, on its own, indicate that Plaintiff was able to do medium range work and waitressing work. Again, the ALJ did not explain how the fact that Plaintiff had held this job (which she lost because of health-related absences) showed that she could now perform her prior relevant work as a waitress.

Since the ALJ did not explain how he came to the conclusion that Plaintiff could perform her past work as a waitress while missing about two days of work per month and taking frequent unscheduled bathroom breaks, especially in light of the suggestion that she has lost her past three jobs in part because of absences, he has failed to "build the 'accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.'" <u>Young v. Barnhart</u>, 362 F.3d 995, 1002 (7th Cir. 2004) (<u>quoting</u> <u>Scott v. Barnhart</u>, 297 F.3d 589, 595 (7th Cir. 2002)).

---

[9]     Though a Vocational Expert was present at Plaintiff's hearing, there is no indication that the ALJ consulted him as to whether Plaintiff could miss work and take frequent bathroom breaks and still hold down a waitressing job. (R. 419). The Vocational Expert submitted documentation of the requirements of the jobs of Hotel and Restaurant Cook, Hotel and Restaurant Food Service Manager, and Hotel and Restaurant Waiter/Waitress. (R. 141-44). However, none of these includes an evaluation of schedule flexibility and the ability to take unscheduled bathroom breaks.

B.    The ALJ erred in failing to recontact Dr. Cheema regarding his opinion
      that Plaintiff was limited in lifting weight.

Plaintiff argues that the ALJ failed to take into account Plaintiff's osteopenia, caused by her steroid therapy for Crohn's disease, asserting that there is evidence to support Dr. Cheema's opinion that Plaintiff should not lift heavy weights on a regular basis and the ALJ failed to address this evidence.  Further, she asserts that Dr. Cheema's opinion was necessary for the ALJ's residual functional capacity determination, and that without Dr. Cheema's opinion, there was no other evidence upon which the ALJ could rely.  Finally, Plaintiff contends that even if the ALJ did not find support for Dr. Cheema's conclusion regarding Plaintiff's lifting capability, he was required to contact Dr. Cheema for explanation.

Again, Defendant argues in opposition that the ALJ was not required to grant significant weight to Dr. Cheema's opinion, because it is not supported by substantial medical evidence and is inconsistent with the state agency physicians' opinions, and that the ALJ provided specific "good reasons" for declining to accept Dr. Cheema's opinion.  Additionally, Defendant asserts that the ALJ appropriately weighed the different physicians' opinions in the record when he made his residual functional capacity determination.  Defendant notes that a RFC determination "is a legal, not a medical, decision and is reserved to the agency, and the agency need not accept only physicians' opinions."  (Def.'s Br. at 12).

The Court agrees that the ALJ was required to recontact Dr. Cheema for clarification regarding Plaintiff's lifting capability.  If the medical evidence provided in the record is sufficient for the ALJ to make a determination, the ALJ need not

recontact the treating physician.  See 20 C.F.R. § 404.1512(e); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004).  Here, however, there was no medical evidence in the record as to Plaintiff's lifting ability.  As the ALJ noted, Dr. Cheema's report gave no explanation as to why he believed Plaintiff should be limited in her ability to lift weight, and the state agency physicians similarly gave no explanation as to why they believed that she would be able to lift heavier weights.

The ALJ had no substantial evidence on which to rely in making his determination that Plaintiff would now be able to lift 20 pounds frequently and 50 pounds occasionally, as required by the full range of medium work as defined in 20 CFR §§ 404.1567(c) and 416.967(c).  None of the physicians gave any explanation for their opinions as to her ability to lift, and her medical records do not reveal any assessment of her lifting ability.  Further, the ALJ seems to have relied on Plaintiff's work both before and after the alleged onset of disability in November 2004 to find that she could now perform medium work, but, as discussed above, he fails to address the evidence that Plaintiff lost her waitressing jobs in part because of her inability to lift and that her later job was a clerical position that presumably did not involve heavy lifting.  In light of this omission, the Court cannot find that the ALJ properly considered the evidence.  Indeed, the only evidence as to Plaintiff's lifting ability, Plaintiff's written statements, contradicts his determinations.  (R. at 80-81, 103-05).  Even though he found Plaintiff to be non-credible, the ALJ had no other evidence for his conclusion that Plaintiff could lift heavy weights.

Therefore, as there was no evidence in the record as to Plaintiff's current lifting ability, the ALJ was required to recontact Dr. Cheema. 20 C.F.R. § 404.1512(e); Skarbek, 390 F.3d at 503-04 ("An ALJ need recontact medical sources…when the evidence received is inadequate to determine whether the claimant is disabled.").

C.    The ALJ erred in failing to contact Dr. Cheema about the
       frequency and severity of Plaintiff's flare-ups.

Plaintiff argues that the ALJ was required to contact Dr. Cheema regarding the frequency and severity of Plaintiff's flare-ups because Dr. Cheema's report was inadequate. 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). Plaintiff argues that there were no countervailing opinions that the ALJ could rely on to determine Plaintiff's RFC. (Pl.'s Br. at 19). In opposition, Defendant argues that the ALJ did not have a duty to contact Dr. Cheema for clarification regarding Plaintiff's flare-ups. Defendant asserts that the ALJ reviewed Dr. Cheema's opinion and did not find that it was ambiguous, but rather he found that Dr. Cheema's opinion was not adequately supported by the medical record and that Dr. Cheema failed to provide explanations for his conclusions. Defendant argues that Dr. Cheema's failure to provide support does not obligate the ALJ to recontact him.

The ALJ was required to recontact Dr. Cheema regarding the frequency and severity of Plaintiff's flare-up. An ALJ is required to recontact a treating physician if the physician's report is ambiguous or inadequate for the ALJ to make a disability determination. See 20 C.F.R. § 404.1512(e). The ALJ himself admitted that Dr. Cheema's report was inadequate, as it "did not indicate the frequency with which

these exacerbations would occur, nor the extent to which exacerbations would limit her functionality." (R. 18). He did not state, as Defendant contends, that the report was not adequately supported or that he rejected it, as discussed above. Instead, he ignored the issue raised by the report in making his determination. See Myles, 2009 WL 2870616, *5 (ALJ erred in failing to inquire as to how often claimant's "bad" days would occur).

## CONCLUSION

In light of the ALJ's failure to explain his conclusion that Plaintiff's need for unscheduled bathroom breaks and absences from work would not impair her ability to do her prior work as a waitress, and his failure to recontact Dr. Cheema, Plaintiff's treating physician, for additional evidence about her lifting ability and the frequency of Plaintiff's flare-ups, the Court finds that the ALJ's decision is not supported by substantial evidence. The record does not independently indicate that Plaintiff should receive benefits, but the ALJ has not adequately supported his conclusions that she should not receive benefits.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. 11) is GRANTED IN PART, and Defendant's Motion for Summary Affirmance (Doc. 13) is DENIED. Pursuant to sentence 4 of 42 U.S.C. § 405(g), the Commissioner's decision is AFFIRMED IN PART and REVERSED IN PART. The Commissioner's decision is REVERSED only with respect to the decision that Plaintiff could perform the full range of medium work and her past relevant work. This matter is REMANDED to the Commissioner of Social Security for the limited purpose of

determining whether Plaintiff's absences and bathroom breaks impair her ability to work at her past relevant work, whether she can lift the weights specified in the definition of medium work or required by her past relevant work, and whether, in light of her periods of exacerbated symptoms, Plaintiff is nonetheless capable of performing her past relevant work or any other work.

Entered this <u>29th</u> day of October, 2009

    s/ Joe B. McDade
_____
JOE BILLY McDADE
United States District Judge
